LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HECTOR JARA,
*on behalf of himself,*
*FLSA Collective Plaintiffs*                          Case No: 17 CV 9622
*and the Class,*

                    Plaintiff,

                                                      **FIRST AMENDED**
                                                      **CLASS AND**
                                                      **COLLECTIVE**
                                                      **ACTION COMPLAINT**

            v.

FELIDIA RESTAURANT, INC.,
POLA RESTAURANT INC. d/b/a BECCO,
IL POSTO LLC d/b/a DEL POSTO,
PULPO LLC d/b/a ESCA,
BABBO LLC,
MARIO BATALI,
JOSEPH BASTIANICH,
and LIDIA BASTIANICH,

                    Defendants.

---

        Plaintiff, HECTOR JARA ("Plaintiff"), on behalf of himself and others similarly situated,

by and through his undersigned attorneys, hereby files this First Amended Class and Collective

Action Complaint against Defendants, FELIDIA RESTAURANT, INC., POLA RESTAURANT

INC. d/b/a BECCO, IL POSTO LLC d/b/a DEL POSTO, PULPO LLC d/b/a ESCA, BABBO

LLC (the "Corporate Defendants"), MARIO BATALI, JOSEPH BASTIANICH, and LIDIA BASTIANICH (the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium, (3) unpaid wages due to time shaving, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium, (3) unpaid wages due to time shaving, (4) statutory penalties, (5) liquidated damages and (6) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to the New York State Human Rights Law, ("NYSHRL"), he is entitled to recover from Defendants for discrimination based on disability status, resulting a failure to provide "reasonable accommodation": (1) compensatory damages.

4.      Plaintiff further alleges that, pursuant to the New York City Human Rights Law, ("NYCHRL"), he is entitled to recover from Defendants for discrimination based on disability status, resulting in a failure to provide "reasonable accommodation": (1) compensatory and punitive damages and (2) attorneys' fees and costs.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

7.     Plaintiff, HECTOR JARA, for all relevant time periods, was a resident of Queens County, New York.

8.     Defendants collectively own and operate five Italian restaurants in New York City:

   (a)   "Felidia," located at 243 East 58th Street, New York, NY 10022;

   (b)   "Becco," located at 355 West 46th Street, New York, NY 10036;

   (c)   "Del Posto," located at 85 10th Avenue, New York, NY 10011;

   (d)   "Esca," located at 402 West 43rd Street, New York, NY 10036; and

   (e)   "Babbo," located at 110 Waverly Place, New York, NY 10011.

(collectively, the "Restaurants").

9.     FELIDIA RESTAURANT, INC. is a domestic business corporation organized under the laws of the State of New York with an address for service of process at Joanne Taylor c/o Pasta Resources, 45 East 20th Street, Third Floor, New York, NY 10003, a corporate office located at 45 East 20th Street, Third Floor, New York, NY 10003, and a principal place of business located at 243 East 58th Street, New York, NY 10022.

10.     POLA RESTAURANT INC. d/b/a BECCO is a domestic business corporation organized under the laws of the State of New York with an address for service of process at Pola

Restaurant Inc. c/o B&B HG, 45 East 20th Street, Third Floor, New York, NY 10003, a corporate office located at 45 East 20th Street, Third Floor, New York, NY 10003 and a principal place of business located at 355 West 46th Street, New York, NY 10036.

11.     IL POSTO LLC d/b/a DEL POSTO is a domestic limited liability corporation organized under the laws of the State of New York with an address for service of process at 45 East 20th Street, Third Floor, New York, NY 10003, a corporate office located at 45 East 20th Street, Third Floor, New York, NY 10003, and a principal place of business located at 85 10th Avenue, New York, NY 10011.

12.     PULPO LLC d/b/a ESCA is a domestic limited liability corporation organized under the laws of the State of New York with an address for service of process at 45 East 20th Street, Third Floor, New York, NY 10003, a corporate office located at 45 East 20th Street, Third Floor, New York, NY 10003, and a principal place of business located at 402 West 43rd Street, New York, NY 10036.

13.     BABBO LLC is a domestic limited liability corporation organized under the laws of the State of New York with an address for service of process and a principal place of business located at 110 Waverly Place, New York, NY 10011, and a corporate office located at 45 East 20th Street, Third Floor, New York, NY 10003.

14.     Individual Defendant, MARIO BATALI is an owner and principal of each of the Corporate Defendants. Defendant BATALI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant MARIO BATALI frequently visits each of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the

Class. At all times, employees of the Restaurants could complain to Defendant BATALI directly regarding any of the terms of their employment, and Defendant BATALI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

15.    Individual Defendant, JOSEPH BASTIANICH is an owner and principal of the Corporate Defendants. Defendant JOSEPH BASTIANICH exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant JOSEPH BASTIANICH frequently visits each of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant JOSEPH BASTIANICH directly regarding any of the terms of their employment, and Defendant JOSEPH BASTIANICH would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

16.    Individual Defendant, LIDIA BASTIANICH is an owner and principal of the Corporate Defendant. Defendant LIDIA BASTIANICH exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. Defendant LIDIA BASTIANICH frequently visits each of the Restaurants. She exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs

and the Class. At all times, employees could complain to Defendant LIDIA BASTIANICH directly regarding any of the terms of their employment, and Defendant LIDIA BASTIANICH would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

17.     Defendants operate the Restaurants as a single integrated enterprise, under the control of Individual Defendants. They are engaged in related activities, share common ownership and have a common business purpose. Specific facts supporting the assertion that Defendants operate as a single integrated enterprise include:

(a)     Corporate Defendants share a common purpose of owning and operating high-end Italian restaurants in New York City.

(b)     Each of the Corporate Defendants is a member of the Batali & Bastianich Hospitality Group ("B&B"), a restaurant group fully-owned by the Individual Defendants headquartered at 45 East 20th Street, Third Floor, New York, NY 10003. Corporate Defendants all have principal corporate offices located at the headquarters of B&B.

(c)     The Restaurants share common management and corporate executive leadership.

(d)     The individual website for each of the Restaurants is accessible from the B&B website at http://www.bandbhg.com/our_restaurants.cfm.

(e)     Customers may make reservations for a private dining experience at any one of the Restaurants through the B&B website at http://bandbhg.com/private_dining.cfm

(f)     The Restaurants share a "common mission", which is articulated at http://www.bandbhg.com/about.cfm.

(g)     The individual website for each of the Restaurants is accessible from the personal site of Defendant LIDIA BASTIANICH, http://lidiasitaly.com/restaurants/.

(h)     Non-exempt employees are interchangeable among the Restaurants, and are frequently transferred between the Restaurants by Defendants.

(i)     The Restaurants maintain centralized labor relations and human resources, and a single payroll system for employees at all facilities.

18.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

19.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

20.     Although Plaintiff did not work at each of Defendants' Restaurants, all are appropriately named in this Complaint through the relevant Corporate Defendants. Because the Restaurants share identical illegal wage and hour policies, they (and the relevant Corporate Defendants) are properly named on the basis of their outstanding liability to the Class members for whom Plaintiff seeks to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs) employed by Defendants at the Restaurants on or after the date that is six years before the filing

of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.      At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek and (ii) compensation for all regular and overtime hours worked due to a policy of time shaving.

23.      Furthermore, a subclass of all FLSA Collective Plaintiffs who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiff was a Tipped Subclass Member. Defendants were not entitled to deduct any tip credits from the wages earned by the Tipped Subclass, because they failed to satisfy all FLSA requirements for taking a tip credit. Specifically, Defendants (i) failed to provide proper notice to the Tipped Subclass that a tip credit was being claimed, (ii) failed to indicate the tip credit allowance taken on weekly wage statements given to Plaintiffs and FLSA Collective Plaintiffs, (iii) required Plaintiffs and FLSA Collective Plaintiffs to spend at least two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities., and (iv) mandated tip pooling schemes without the consent of tipped employees, whereby non-tipped employees participated in the tip pool.

24.      The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be

provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

25.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

26.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of waiters, runners, and busboys ("Tipped Subclass") who also number more than forty (40).

28.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member

of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay minimum wage, (ii) failing to pay the overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek (iii) time-shaving, and (iv) failing to provide wage statements that were in compliance with requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     Furthermore, a subclass of all Class Members who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiff and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL, including Defendants' (i) failure to provide notice that a tip credit was being claimed, (ii) failure to record the tip credit allowance taken on periodic wage statements given to Plaintiffs and Tipped Subclass members, (iii) policy of requiring Plaintiffs and Tipped Subclass members to spend two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities, (iv) institution of tip pooling schemes without consent of tipped employees, whereby non-tipped employees participated in the tip pool.

30.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.      Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants provided wage statements informing Plaintiff and Class members of the amount of tip allowance taken for each payment period;

e)  Whether Defendants required Plaintiff and Class members to perform non-tipped work for more than two (2) hours, or twenty percent (20%) of each shift;

f)  Whether Defendants established the tip payment structure for Class members without the agreement or consent of the Class members;

g)  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and Class members were required to share tips earned with non-tipped employees;

h)  Whether Defendants provided Plaintiff and Tipped Subclass Members proper notice for their claimed tip credit;

i)  Whether Defendants provided to Plaintiff and Class members annual wage notices, as required under the New York Labor Law

j)   Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law;

k)   Whether Defendants paid Plaintiff and Class members the federal and state minimum wage for all hours worked;

l)   Whether Defendants properly compensated Plaintiff and Class members overtime premiums for all hours worked in excess of forty (40) under state and federal law; and

m)   Whether Defendants caused time-shaving by paying Plaintiff and Class members only for those hours during which they were scheduled to work, rather than for the actual hours that they worked.

## STATEMENT OF FACTS

34.    In or around October 2015, Plaintiff HECTOR JARA was hired by Defendants to work as a busboy at Defendants' "Felidia" Restaurant, located at 243 East 58th Street, New York, NY 10022. Plaintiff's employment was terminated by Defendants on January 14, 2017.

35.    Throughout his employment by Defendants, Plaintiff was required to work the following hours each week:

i.    11:00 a.m. until 12:30 p.m. on Tuesdays;

ii.   3:30 p.m. until 12:30 p.m. on Wednesdays and Thursdays;

iii.  11:00 a.m. until 1:00 a.m. on Fridays; and

iv.   3:30 p.m. until 1:00 a.m. on Saturdays.

Pursuant to this Plaintiff worked a total of approximately fifty-five (55) hours per week throughout his employment by Defendants. Throughout Plaintiff's employment by Defendants,

he was never allowed any mid-shift breaks to eat. Similarly, FLSA Collective Plaintiffs and Class members were not permitted any mid-shift breaks to eat by Defendants.

36.     From October 2015 until December 31, 2015, Plaintiff's straight time base hourly wage was $5.00. Then, from January 1, 2016 until January 14, 2017, the date his employment was terminated, Plaintiff's straight time base hourly wage was $7.50. Similarly, Tipped Subclass Members were all paid at hourly rates below the applicable federal and New York State minimum wages.

37.     Throughout Plaintiff's employment by Defendants, Defendants subjected Plaintiff to time-shaving of between ten (10) and fifteen (15) hours each workweek. Due to Defendants' policy of time shaving, even though Plaintiff worked approximately fifty-five (55) hours each workweek, he was only compensated by Defendants for working approximately forty (40) – forty-five (45) hours each week, resulting in unpaid wages and overtime. Similarly, FLSA Collective Plaintiffs and Class Members suffered as a result of Defendants' time shaving, and were not compensated for at least ten (10) hours that they worked each week, resulting in unpaid wages and overtime.

38.     Even for those overtime hours that Defendants did not subject to their policy of time shaving, Plaintiff's overtime pay rate was below the legally required hourly rate, due to Defendants' invalid tip credit. Plaintiff was entitled to overtime compensation at one and one-half times the full New York State minimum wage rate for all hours that he worked in excess of forty (40) per workweek. However, Plaintiff did not receive overtime premium at that rate, because Defendants claimed a tip credit against Plaintiff's overtime hours. Similarly, FLSA Collective Plaintiffs and Tipped Subclass Members were not paid overtime at the correct rate of

one and one half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek, due to Defendants' unlawful tip credit.

39.    Throughout his employment by Defendants, Defendants compensated Plaintiff at invalid "tip credit" base hourly wage. Similarly, other Tipped Subclass members were compensated by Defendants at base hourly rates below the prevailing federal and state minimum wages. However, Defendants never met either the federal or New York State requirements to claim a tip credit against the wages of Plaintiff or Tipped Subclass Members.

40.    Plaintiff and Tipped Subclass members did not receive any notice that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed in writing or orally that Defendants were claiming a tip credit allowance, and never received any notice of the amount of tip credit allowance taken for each payment period during their employment, or of the hourly rate of tip credit deduction.

41.    Defendants failed to record the tip allowance deducted from compensation earned by Plaintiff and the Tipped Subclass on the wage statements that they received. Even though some of the wage statements Plaintiff received included a section labeled "Deductions," Defendants' tip credit deductions are not stated there. The wage statements issued to Plaintiff and the Tipped Subclass also do not state the hourly rate of tip credit claimed.

42.    Plaintiff and Tipped Subclass members were required by Defendants management to participate in an invalid "tip pooling" scheme. Plaintiff and Tipped Subclass Members never agreed upon their tip allocation percentage, which was assigned by management and not agreed upon mutually among tipped employees. Further, under Defendants' tip-pooling scheme, sommeliers at Felidia, who were not tipped employees, were permitted by management

to take  from the tip pool. In fact, sommeliers were awarded larger portions of the weekly tip pool by Defendants than Plaintiff and other members of the Tipped Subclass were.

43.     Plaintiff and the Tipped Subclass were required to spend more than two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities. Specifically, Plaintiff and Tipped Subclass members were required to perform non-tipped tasks including, but not limited to: cleaning tables on the 2nd Floor of the restaurant, take out garbage, taking out tablecloths for cleaning, sweeping, mopping, washing dishes in the party room, taking receipt of and unloading boxes of wine and storing them, for more than two (2) hours or twenty percent (20%) of each shift.

44.     Defendants never provided Plaintiff with wage-and-hour notices, upon hiring, or upon any change to the information on the notice, as required by the NYLL. Similarly, Class Members were never provided with any wage notices.

45.     At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage statements, as required by the NYLL. At all relevant times Plaintiff and Class members received fraudulent wage statements that did not accurately reflect the hours that they worked, as Defendants failed to accurately maintain such records.

46.     Plaintiff suffers from chronic neuralgia and sciatica. Due to such medical conditions, he suffers extreme back pain from performing strenuous activities.  Plaintiff was advised by a health professional he consulted in December 2016 to avoid various activities that would likely result in pain and possible aggravation of his medical condition. Such activities including excessive stair climbing and carrying heavy objects.

47.     Plaintiff informed his manager, Santiago Penzances of his medical condition and requested that he not be required to carry heavy wine boxes up flights of stairs, which is not a

duty essential to his work as a busboy. Penzances refused Plaintiff's request and yelled at Plaintiff for not performing such additional duties.

48.     Soon thereafter, on January 14, 2017, Plaintiff was discharged from his employment by his manager, Santiago Penzances, due to his request for reasonable accommodation of his disability.

49.     Defendants paid Plaintiff and the Tipped Subclass at "tip credit" rates below the prevailing federal and New York State minimum wages.  However, Defendants were not entitled to claim any tip credits under the FLSA or NYLL, because they (i) failed to provide notice that a tip credit was being claimed, (ii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiffs and Tipped Subclass members, (iii) implemented a policy of requiring Plaintiffs and Tipped Subclass members to spend at least two (2) hours, or twenty percent (20%) of each shift engaged in non-tipped activities, and (iv) mandated an unlawful tip pooling scheme whereby non-tipped sommeliers were permitted to share in the tip pool.

50.     Defendants unlawfully failed to pay Plaintiff, the FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for hours they worked in excess of forty (40) each workweek, both due to (i) an invalid tip credit, and (ii) time-shaving.

51.     At no time during the relevant time periods did Defendants provide Plaintiff or Class members with wage notices or proper wage statements as required by NYLL. Plaintiff and Class members received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked. With respect to the Tipped Subclass, Defendants also failed to disclose the amount of tip credit claimed in each pay period or the hourly amount of tip credit claimed on the wage statements provided.

52.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

53.     Plaintiff realleges and reavers Paragraphs 1 through 51 of this class and collective action Complaint as if fully set forth herein.

54.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

55.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

57.     At all relevant times, the Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiff and Tipped Subclass for their hours worked. As factually described above, Defendants were not entitled to claim any tip credits under FLSA with respect to the Tipped Subclass.

58.     At all relevant times, the Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for hours worked in excess of forty (40) hours per workweek.

59.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime hours in excess of forty (40) that he worked each week.

60.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

62.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

63.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, and an equal amount as liquidated damages.

64.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

65.     Plaintiff realleges and reavers Paragraphs 1 through 63 of this class and collective action Complaint as if fully set forth herein.

66.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

67.     Defendants willfully violated Plaintiff and Class members' rights by failing to pay them minimum wages in the lawful amount for hours worked.  As factually described above, Defendants were not entitled to claim any tip credits under NYLL with respect to the Tipped Subclass.

68.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours each workweek.

69.     At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff and Class Members for all hours that he worked each week.

70.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

71.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

72.     Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

73.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime

premium, unpaid wages resulting from time shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (DISABILITY STATUS BASED DISCRIMINATION)

74.     Plaintiff realleges and reavers Paragraphs 1 through 72 of this Complaint as if fully set forth herein.

75.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disability status.

76.     Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

77.     Plaintiff suffers from a physical condition that prevents him from exercising a normal bodily function.

78.     Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by refusing to provide a reasonable accommodation for Plaintiff on the basis of his disability status. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

79.     Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of disability status, Plaintiff is entitled to recover from Defendants: (1) compensatory damages.

## COUNT IV

## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>

## <u>(DISABILITY STATUS BASED DISCRIMINATION)</u>

80.     Plaintiff realleges and reavers Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

81.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's disability status.

82.     Plaintiff is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

83.     Plaintiff suffers from a physical impairment.

84.     Defendants operated a business in New York City that discriminated against Plaintiff in violation of the NYCHRL by refusing to provide a reasonable accommodation for Plaintiff on the basis of his disability status. Such discriminatory conduct by Defendants ultimately led to Plaintiff's termination by Defendants.

85.     Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of disability status, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and attorneys' fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law, and the New York State Human Rights Law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of damages to Plaintiff, retroactive to the date of his discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

d. An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

e. An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

f. An award of unpaid compensation due to Defendants' policy of time-shaving;

g. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage, pursuant to 29 U.S.C. § 216;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage, and compensation for all hours work, pursuant to the New York Labor Law;

j.   An award of compensatory damages due under the New York State Human Rights Law;

k.   An award of compensatory damages due under the New York City Human Rights Law;

l.   An award of punitive damages due under the New York City Human Rights Law;

m.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

n.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o.   Designation of this action as a class action pursuant to F.R.C.P. 23;

p.   Designation of Plaintiff as Representative of Class; and

q.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 7, 2018

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*
    C.K. Lee (CL 4086)